664 So.2d 934 (1995)
INQUIRY CONCERNING A JUDGE, No. 93-391, re Hugh M. FLETCHER.
No. 83957.
Supreme Court of Florida.
October 12, 1995.
*935 Joseph J. Reiter, Chairperson and Ford L. Thompson, General Counsel, Tallahassee, and Frank D. Upchurch, III of Upchurch, Bailey and Upchurch, P.A., St. Augustine, Special Counsel for Florida Judicial Qualifications Commission, for petitioner.
Kenneth Vickers of Vickers & Andrews, Jacksonville, for respondent.
PER CURIAM.
We review the recommendation of the Judicial Qualifications Commission (the Commission) that Judge Hugh M. Fletcher be disciplined. We have jurisdiction. Art. V, § 12, Fla. Const.
The Notice of Formal Charges filed against Judge Fletcher alleged that:
1. On the night of April 4, 1993, at approximately 9:00 o'clock p.m., you were operating your boat in the Intracoastal Waterway in the vicinity of the residence of Frank Driggers, 4973 San Pablo Road, South, Jacksonville, Florida.
2. At that time and place, you drove your boat so that it struck a dock belonging to Mr. Driggers. You left the scene of the accident without reporting it. Shortly thereafter, when you encountered a Florida Marine Patrol officer on your way home, you denied that you struck the dock and stated that you struck an object in the channel.
3. You were under the influence of alcohol while operating your boat on the evening in question. Shortly after you arrived home, you failed a horizontal gaze test for alcohol impairment administered by a Florida Marine Patrol officer. Your speech was slurred.
Judge Fletcher's answer denied that he struck the dock and admitted that he told the officer he did not strike the dock:
1. As to paragraph 1, the respondent admits that on April 4, 1994, he was operating a boat in the intracoastal waterway and denies the remaining allegations therein.
2. As to paragraph 2, the respondent denies that he struck the dock as alleged, he admits that he denied striking the dock to Marine Patrol Officers and admits that he told the officers he struck an object in the canal.
3. As to paragraph 3, the respondent denies each and every allegation therein.
Judge Fletcher and the Commission subsequently entered into a stipulation providing that:
1. On the evening of April 4, 1993, Judge Fletcher was operating his motor boat on the Intracoastal Waterway in northern St. Johns County when it collided with a dock belonging to Mr. and Mrs. Frank Driggers. He left the scene without reporting the accident. Shortly thereafter, Judge Fletcher encountered a Florida Marine Patrol officer and told him he had struck an object in the middle of the channel.
2. Judge Fletcher regrets and apologizes that this incident occurred and recognizes that it diminishes the public's confidence in the Judiciary.
3. Judge Fletcher will not contest the recommendation of the Commission as set forth below, charging him with a violation of Canon 1 and Canon 2A of the Code of Judicial Conduct and will not contest that he violated those provisions of the Code of Judicial Conduct.
4. The Commission and Judge Fletcher waive oral argument.
The Commission recommends that Judge Fletcher be found guilty of violating the Code of Judicial Conduct and that he be publicly reprimanded:

*936 After full and deliberate consideration of the charges set forth in the notice, the Commission by a vote of at least nine (9) members, finds that the conduct of Judge Fletcher violated the provisions of Canons 1 and 2A of the Code of Judicial Conduct, and recommends to the Supreme Court of Florida that Judge Hugh McKay Fletcher be publicly reprimanded for his above-described conduct and his violation of Canons 1 and 2A of the Code of Judicial Conduct.
We withhold acting on the Commission's recommendation because this record is too sparse to serve as a basis for imposing or declining to impose discipline.
The stipulation is silent as to the most critical charges contained in the complaint  colliding with a dock while operating a boat under the influence of alcohol and lying to a Florida Marine Patrol officer when confronted. Although Judge Fletcher asserted in his answer that he did not strike the dock and that he told the officer he did not, the stipulation contradicts his answer and admits that he struck the dock. It is unclear whether Judge Fletcher is also admitting that he lied to the officer.
The Commission is charged with the constitutional duty "to investigate and recommend to the Supreme Court ... the reprimand of a ... judge ... whose conduct ... warrants such a reprimand." Art. V, § 12(a), Fla. Const. Unfortunately, the present record contains no explanation and little or no investigative evidence in support of the Commission's recommendation. In fact, the only documents of substance are the Commission's four-page complaint, the judge's one-page answer, and the two-page "Stipulation and Recommendation." There are no affidavits or testimony.
We recognize that this Court can impose no discipline without a recommendation from the Commission, but for this Court to act blindly on a stipulation and recommendation that is silent on the pivotal charges reduces the Court to little more than a rubber-stamp in the review process. We are convinced that article V, section 12 does not envision this as the proper role for the Court.
The constitution states in unambiguous terms that the report of the Commission is a recommendation: "Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the ... judge be disciplined by appropriate reprimand... ." Art. V, § 12(f), Fla. Const. (emphasis added). Giving this language its plain meaning, we conclude that use of the word "may" connotes discretion and indicates that acceptance or rejection of recommended disciplinary measures is left ultimately in the hands of this Court.
In a similar case of judicial discipline involving a stipulation, Justice Ehrlich decried the lack of an adequate record and advocated remanding the case for formal proceedings:
The issue before us is far too serious, and the consequences too far-reaching, to handle on the basis of the facts given to us. I would therefore refuse to accept the recommendations of the JQC and would remand the matter to the JQC to handle by means of formal proceedings.
In re Speiser, 445 So.2d 343, 345 (Fla. 1984) (Ehrlich, J., dissenting). We stop short of remanding for formal proceedings because we feel that this would exceed our constitutional authority.
We have no sound basis for exercising our discretion concerning Judge Fletcher's discipline and are left with a choice: either blindly accepting or rejecting the Commission's recommendation, or withholding action on the recommendation pending submission of a more complete record or explanation. We choose the latter course as the most prudent alternative and remand this case to the Commission to give it an opportunity, if it so chooses, to supplement the record or submit an explanation addressing this Court's concerns.[1]
In sum, this Court cannot reach a fair and informed decision concerning Judge Fletcher's discipline on the information before *937 us. If the judicial review process is to mean anything at all, the reviewing court must be given an adequate record or explanation on which to base its decision. This is especially critical in the sensitive area of judicial discipline.
It is so ordered.
SHAW, KOGAN, WELLS and ANSTEAD, JJ., concur.
SHAW, J., concurs with an opinion, in which KOGAN and WELLS, JJ., concur.
KOGAN, J., concurs with an opinion, in which SHAW and WELLS, JJ., concur.
GRIMES, C.J., dissents with an opinion, in which OVERTON, J., concurs.
OVERTON, J., dissents with an opinion.
HARDING, J., dissents with an opinion, in which GRIMES, C.J., and OVERTON, J., concur.
SHAW, Justice, concurring.
Justice Overton in his dissent expresses concern that the majority opinion could be viewed by the Commission as a "thinly veiled direction to the Judicial Qualifications Commission to try again to obtain the required nine votes for removal." This most emphatically is not my intent. To my mind, the majority opinion simply says that the present record is too sparse to allow the Court to carry out its constitutional mandate.
Under our constitution, this Court  not the Commission  is charged with final responsibility for imposing judicial discipline. See Art. V, § 12, Fla. Const. When the Court places its imprimatur upon a recommended discipline, it is in effect proclaiming that in the judgment of the Supreme Court of Florida the sanction fits the infraction. If the imposed discipline ultimately turns out to be inappropriate, it is this Court alone that bears full responsibility. The buck stops here.
In the present case, there is nothing for the Court to focus on. The stipulation says just three things: 1) Judge Fletcher drove his boat into a dock; 2) he left the scene without reporting the incident; and 3) he told an officer that he struck an object in the middle of the channel. The conduct underlying these bare facts could be entirely blameless or it could be fraught with misconduct  I cannot tell.
I cannot in good conscience vote to blindly accept a recommended discipline without knowing the basis for the recommendation. Otherwise, this Court's imprimatur is reduced to nothing more than a rubber stamp for whatever discipline a commission may recommend.
KOGAN and WELLS, JJ., concur.
KOGAN, Justice, concurring.
I fully concur with the majority but write separately to address the concerns raised by Chief Justice Grimes and Justice Overton. In no sense do I construe the majority opinion as somehow attempting to force the Commission to vote for removal. The issue here is not a second-guessing of the Commission's action, but rather the right of the public to know the true facts about a judge's alleged misconduct. And that is the reason why the majority's approach is absolutely essential if we are to maintain public confidence in the judiciary and its integrity. In plain terms, judges should not be able to shield the facts of their misconduct from the public through the simple expedient of a stipulation consisting of a few bare sentences. Nor may the Commission be a party to any stipulation that effectively undermines the plain intent of article V, section 12: to let the people know.
Under article V, section 12 of the Florida Constitution, this Court is required to conduct a meaningful review of discipline cases in keeping with the obvious policy of protecting Floridians from judicial abuses and ensuring the integrity of the judiciary. I utterly fail to see how this policy can be served when the Commission itself produces a record so scant that we in effect are blind to what actually has happened. As the record now stands, I believe this Court would be forced to find an insufficient factual basis, meaning that all charges would be dismissed on a technicality. Because the Commission itself recommended discipline, I cannot conclude *938 that it intended such a result. Nor can I conclude that the intent underlying article V, section 12 would be served by such a result. Most of all, I cannot conclude that the public's right to know will be served by an outright dismissal.
SHAW and WELLS, JJ., concur.
GRIMES, Chief Justice, dissenting.
I believe the Court exceeds its authority by remanding this case for purposes of obtaining a supplemental record. Unlike The Florida Bar, over which this Court has plenary jurisdiction, the Judicial Qualifications Commission is a separate constitutional body. The Commission's function is to investigate and recommend to this Court the removal or reprimand of any judge or justice whose conduct warrants such action. Art. V, § 12, Fla. Const.
In this instance, the Commission made its investigation and based upon stipulated facts recommended a public reprimand. If the facts contained in the stipulation justify a public reprimand, this Court should administer a public reprimand. If not, Judge Fletcher should be exonerated. This Court cannot tell the Commission how it should have conducted its investigation of Judge Fletcher or question why the Commission entered into a stipulation which did not contain all of the facts set forth in its charging document.
The majority does not suggest that the stipulated facts concerning Judge Fletcher's conduct fail to justify a public reprimand. Yet, in In re Fowler, 602 So.2d 510 (Fla. 1992), this Court stated that under the constitution we have no authority to impose judicial discipline greater than that recommended by the Commission. Therefore, if we meant what we said, no purpose can be served by remanding for a supplemental record. I would accept the Commission's recommendation and impose a public reprimand.
OVERTON, J., concurs.
OVERTON, Justice, dissenting.
I fully agree with the Chief Justice. In my view, the majority has stepped out of its judicial role and is now assuming a prosecutorial role by directing further investigation and prosecution. That is the only way the majority opinion can be interpreted since, as the Chief Justice points out, the majority does not suggest that this record fails to justify a public reprimand.
Further, and as important, the majority totally ignores the limitations that article V, section 12(f), of the Florida Constitution, places on this Court by providing that no discipline may be imposed unless recommended by "two-thirds [nine out of thirteen] of the members of the judicial qualifications commission." The majority opinion is, in my view, a thinly veiled direction to the Judicial Qualifications Commission to try again to obtain the required nine votes for removal. We have no authority under the Constitution either to increase the discipline or to direct further proceedings to obtain the desired result. While I might agree that this judge should be removed for this misconduct, I, as a justice of this Court, have no constitutional authority to direct new proceedings to achieve my personal view in this manner. I am a judge  not a prosecutor.
HARDING, Justice, dissenting.
I agree with the dissenting opinions of Chief Justice Grimes and Justice Overton. The Judicial Qualifications Commission (JQC) is a constitutional body with "jurisdiction to investigate and recommend" to this Court the removal or reprimand of justices and judges. Art. V, § 12(a), Fla. Const. Upon recommendation of two-thirds of the JQC members, this Court "may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office." Art. V, § 12(f), Fla. Const. I find no constitutional authority for this Court to remand to the JQC with instructions to supplement the record. This Court must either accept the stipulation and impose the recommended reprimand or decline to take action. We are not free to tell the JQC how to conduct its business.
As noted by the majority opinion, this Court has been faced with a similar situation before and apparently declined to follow the path advocated by the majority here. Majority *939 op. at 936. In In re Speiser, 445 So.2d 343 (Fla. 1984), this Court accepted the JQC's recommendation that Judge Speiser be reprimanded. The record consisted of the notice of formal proceedings and the parties' stipulation that the factual matters stated in the notice were true. In the dissenting opinion, Justice Ehrlich stated the stipulated facts did "not contain the detail that would result if a formal hearing had been held, and to that extent we are handicapped." Speiser, 445 So.2d at 344 (Ehrlich, J., dissenting). Justice Ehrlich also complained that the issue was "far too serious, and the consequences too far-reaching, to handle on the basis of the facts given to us." Id. at 345. Based upon these concerns, Justice Ehrlich called on the Court to "refuse to accept the recommendations of the JQC and ... remand the matter to the JQC to handle by means of formal proceedings." Id. The majority of the Court apparently was not convinced by this argument. The Court did not remand for further proceedings and instead voted to accept the reprimand recommended by the JQC. Speiser, 445 So.2d at 344.
The majority "stop[s] short of remanding for formal proceedings" in this case, which was the action advocated by Justice Ehrlich in Speiser, because they "feel that this would exceed our constitutional authority." Majority op. at 936. Instead the majority remands this case to the JQC "to supplement the record or submit an explanation addressing this Court's concerns," if the JQC "so chooses." Id. at 936. This is a distinction without a difference. The majority has no problem remanding for an explanation or supplement to the record in order to obtain more detailed facts, but declares that remanding for formal proceedings in order to obtain more detailed facts is beyond the Court's constitutional authority. I believe that remand for either purpose exceeds the Court's constitutional authority. Therefore, I dissent from the majority's decision in this case.
GRIMES, C.J., and OVERTON, J., concur.
NOTES
[1] The Commission, for example, may have concluded that insufficient proof is available to support some of the charges. We cannot tell. Further, we cannot tell whether Judge Fletcher is admitting in the stipulation that he lied to the officer about striking the dock.