908 So.2d 334 (2005)
Inquiry Concerning a Judge re Robert F. DIAZ.
No. SC04-1845.
Supreme Court of Florida.
July 7, 2005.
*335 Richard C. McFarlain, Chair, Tallahassee, FL, and Thomas C. MacDonald, Jr., General Counsel, Tampa, FL, for Florida Judicial Qualifications Commission, Petitioner.
*336 James M. Stark, Fort Lauderdale, FL, for Robert F. Diaz, Respondent.
PER CURIAM.
We have for review a stipulation for discipline in a judicial qualifications proceeding under article V, section 12, Florida Constitution. We approve the stipulation and the discipline recommended therein.

Proceedings Before JQC
The case at bar arises from formal charges brought by the Judicial Qualifications Commission (JQC) against Judge Robert F. Diaz. In the Notice of Formal Charges, the JQC accuses Judge Diaz of sending inappropriate emails to a fellow judge and to the Broward County Hispanic Bar Association. The JQC's notice states in pertinent part:
On or shortly after January 19, 2004, you sent an anonymous e-mail to fellow County Judge Lee Seidman enclosing a news article concerning a circuit judge who had been criticized for reporting illegal immigrants to the federal authorities when he became aware of their status during hearings. In this email you stated, "Isn't this what you used to do in Hollywood (Florida)? We remember." In this message you had reference to an alleged practice of Judge Seidman of a similar nature, which apparently included a number of defendants of Hispanic ancestry. You later sent a similar message to the Hispanic Bar Association of Broward County to call its attention to the alleged practices of Judge Seidman. Under the circumstances, the recipient deemed the message to be abusive and to threaten retaliation at the polls from those of Hispanic ancestry.
To exacerbate this matter you later sent a similar message to the President of the Hispanic Bar Association of Broward County to call its attention to the alleged practice of Judge Seidman.
Subsequently, Judge Diaz entered into a factual stipulation with the JQC waiving his rights to a trial, admitting the charges, and accepting the sanctions recommended by the panel.
Thereafter, the JQC panel made its findings and recommendations. In the findings, the panel stated in pertinent part:
The panel takes a very dim view of the conduct of the respondent in this matter, which involves a serious offense. He in fact sent an implied threat of organized group retaliation because of alleged actions of a fellow judge, and to exacerbate matters sent a copy to a local ethnic bar association. Such conduct is deplorable, and were it not for the respondent's lack of prior disciplinary history and his acknowledgment of his conduct, the panel would consider forwarding this matter for trial and a more severe penalty. The period of suspension would be greater but for the burden placed on the respondent's colleagues.
The stipulation agreed to by Judge Diaz with the JQC specifies that Judge Diaz admits he violated the Code and he further agrees to submit to "a public reprimand, a fourteen day suspension without pay, a $15,000 fine, and a complete and public apology to County Judge Lee Seidman and to the President of the Hispanic Bar Association of Broward County."

Scope of Review
This Court has the discretion to accept, reject, or modify part or all of the JQC's findings and recommendation of discipline. See Art. V, § 12(c)(1), Fla. Const. In In re Andrews, 875 So.2d 441, 442 (Fla.2004), this Court specified the scope of review in judicial misconduct cases, stating:
This Court reviews the findings of the JQC to determine if they are supported *337 by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved. "While this Court gives the findings and recommendations of the JQC great weight, `the ultimate power and responsibility in making a determination rests with this Court.'" In re Kinsey, 842 So.2d 77, 85 (Fla.2003) (footnote omitted) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)). Accordingly, we review the findings to ensure that there is "clear and convincing evidence" to support the alleged ethical violations  a standard of proof which has been described as "more than a `preponderance of the evidence,' but the proof need not be `beyond and to the exclusion of a reasonable doubt.'" Id. (quoting In re Davey, 645 So.2d at 404).
....
The second issue for this Court is whether the JQC's recommendation of a public reprimand is an appropriate discipline in this case.
Id.
In this case, the Notice of Formal Charges quotes and interprets the anonymous emails sent by Judge Diaz to Judge Seidman and the Hispanic Bar Association of Broward County. Because Judge Diaz admitted to the alleged wrongdoing, we accept the commission's findings. In cases where a judge admits to wrongdoing and the JQC's findings are undisputed this Court will ordinarily conclude that the JQC's findings are supported by clear and convincing evidence. See In re Andrews, 875 So.2d at 442 ("Judge Andrews admitted to the conduct alleged by the JQC. Accordingly, the JQC's findings are supported by clear and convincing evidence."); see also In re Angel, 867 So.2d 379, 383 (Fla.2004); In re Schapiro, 845 So.2d 170, 174 (Fla.2003).
It appears here that the commission's concerns were not with the substance of the matters addressed by Judge Diaz, but rather with the fact that Judge Diaz acted anonymously and that his message could be construed as a threat to his judicial colleague that "We [Judge Diaz and others] remember." This was followed by Judge Diaz's action in sending copies of his anonymous communications to the Hispanic Bar Association, presumably to influence that group in its relations with Judge Seidman. The stipulation does not specify the actual canons violated and Judge Diaz does not challenge that omission or seek a remand to address it. Moreover, by his stipulation and agreement, it appears that Judge Diaz has conceded he violated the broad provisions of Canon 1 and Canon 2 of the Code of Judicial Conduct, which can be construed to prohibit judges from making threatening or disparaging remarks about other judges or parties in the manner involved herein.[1] These canons broadly prohibit *338 conduct unbecoming a judicial officer. See In re Richardson, 760 So.2d 932, 933 (Fla. 2000) (interpreting Canon 2(B) as prohibiting "conduct unbecoming a member of the judiciary."); see also In re Schapiro, 845 So.2d 170, 171 (Fla.2003) (involving behavior this Court described as conduct that was "unbecoming a member of the judiciary, [brought] the judiciary into disrepute, and impair[ed] the citizens' confidence both in the integrity of the judicial system and in Judge Schapiro as a judge").
Based upon our review, and because Judge Diaz admits to the wrongdoing and does not contest the commission's findings in any respect, we conclude that the JQC's findings are supported by clear and convincing evidence. Similarly, because Judge Diaz has expressly agreed to the recommended discipline both below and in this Court, including the fine, suspension without pay, and a public reprimand, we accept and approve this discipline.
Accordingly, we approve the stipulation and direct that Judge Diaz pay the $15,000.00 fine and serve the fourteen-day suspension. This opinion shall serve as a public reprimand.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE and BELL, JJ., concur.
CANTERO, J., dissents with an opinion, in which PARIENTE, C.J., concurs.
CANTERO, J., dissenting.
Although I understand the majority's desire to acquiesce to a stipulation, I cannot blithely follow. In my opinion, the facts to which Judge Diaz stipulated do not violate any canon of the Code of Judicial Conduct; and even if they did, the discipline is much too severe compared to other cases. That Judge Diaz stipulated to both the violation and the discipline, apparently to demonstrate his remorse and go on with his life, does not absolve us of our obligation to determine whether he indeed violated the Code and whether the discipline is appropriate.

A. The JQC Has Failed to Allege, Much Less Prove, a Violation of Any Specific Canon
Amendments to the Florida Constitution in 1996 greatly expanded this Court's powers in judicial discipline cases. See In re Alley, 699 So.2d 1369 (Fla.1997) (lamenting the Court's lack of authority to impose a harsher discipline but noting that the 1996 amendment would in the future permit the Court to modify the recommendations of the JQC). The state constitution now provides that this Court "may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations" of the Judicial Qualifications Commission in a matter regarding judicial misconduct and may impose the "appropriate discipline." Art. V, § 12(c)(1), Fla. Const.; see art. V § 12(a)(1), Fla. Const. (defining "discipline" to include "reprimand, fine, suspension with or without pay, or lawyer discipline"). On review of the JQC's findings entered following a formal hearing, our task is "to ensure that there is `clear and convincing evidence' to support the alleged ethical violations." In re Kinsey, 842 So.2d 77, 85 (Fla.), cert. denied, 540 U.S. 825, 124 S.Ct. 180, 157 L.Ed.2d 47 (2003). In reviewing cases in which the JQC and the judge execute a stipulation, we have the same broad authority. As JQC rules recognize, when the parties execute a stipulation, it will be sent "directly to the Supreme Court to accept, reject or modify in whole or in part." Fla. Jud. Qual. Comm'n R. 6(j). Thus, we "independently *339 review[ ] the stipulated facts on which the JQC's findings are based" to confirm that they support the ethical violation charged, and we also "determine[ ] whether the recommended discipline is appropriate." In re Gooding, 905 So.2d 121, 122 (Fla. 2005); see In re Angel, 867 So.2d 379, 382-83 (Fla.2004) (concluding that a stipulation and JQC findings supported a determination that the judge's conduct violated "the spirit and the letter" of the applicable statute and judicial canon); see also In re Andrews, 875 So.2d 441, 442 (Fla.2004) (stating that the JQC's findings, which were based on a stipulation, "show that the statements made by Judge Andrews evidenced a bias" against a litigant in the case before him); In re Brown, 748 So.2d 960, 962 (Fla.1999) ("In consideration of the foregoing stipulation, which is self-explanatory, and upon our independent review of the stipulated circumstances that gave rise to the findings of judicial misconduct, we hereby reprimand Judge Robert E. Brown for the improper judicial conduct set out in the stipulation.") (emphasis added). In each of these cases involving a stipulation, we independently examined the facts and the statute or judicial canon that the judge stipulated to have violated to determine whether the facts demonstrated a violation. In contrast, the majority's acquiescence in the JQC's findings and conclusions in this case, merely because they were based on a stipulation, evades our responsibility to independently review the case.
At a minimum, our duty is to examine the stipulated facts to determine whether the admitted conduct violates the Code of Judicial Conduct. Such review is not unlike a court's examination of a guilty plea to ensure that the admitted facts constitute a crime. In fact, courts have held it fundamental error to accept a plea where the record or stipulated facts do not violate the applicable statute. See, e.g., Dydek v. State, 400 So.2d 1255, 1258 (Fla. 2d DCA 1981) (holding that the defendant's conduct did not constitute a crime and noting, "[w]e can think of no error more fundamental than the conviction of a defendant in the absence of a prima facie showing of the essential elements of the crime charged"); Waugh v. State, 388 So.2d 253, 254 (Fla. 2d DCA 1980) (reversing a conviction where the factual basis for the guilty plea did not establish the crime); see also F.B. v. State, 852 So.2d 226, 230-31 (Fla.2003) (holding that an argument that evidence "is totally insufficient as a matter of law to establish the commission of a crime" need not be preserved because "[s]uch complete failure of the evidence meets the requirements of fundamental error"). Although JQC disciplinary proceedings are not criminal proceedings, we nevertheless have concluded that all judges subject to discipline must be afforded both substantive and procedural due process. In re Inquiry Concerning a Judge, 357 So.2d 172, 181 (Fla.1978). In addition, our administrative rule specifies that when the JQC files a disciplinary recommendation in this Court, we "shall determine whether the commission's recommendation complies with all requirements of the constitution and the commission's rules." Fla. R. Jud. Admin. 2.140(b). Therefore, regardless of the stipulation, we must independently review the facts to confirm that they allege a violation of a specific canon of the Code; and we must review the discipline imposed to ensure that it is consistent with the discipline imposed in other cases.
The state constitution grants the JQC jurisdiction to investigate allegations of judicial misconduct, and upon a finding of probable cause to file "formal charges" against a judge or justice. See art. V, § 12, Fla. Const.; Fla. Jud. Qual. Comm'n R. 6. The JQC's own rule states that the *340 notice of formal charges "shall ... specify in ordinary and concise language the charges against the judge and allege the essential facts upon which such charges are based." Fla. Jud. Qual. Comm'n R. 6(g) (emphasis added). Thus, just as a criminal charge must allege both specific conduct and a law that the conduct violates, the JQC's formal charge should allege conduct that violates a specific canon of judicial conduct. Cf. Schmitt v. State, 590 So.2d 404, 409 (Fla.1991) (explaining that "probable cause" means "a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person in the belief that the person is guilty of the offense charged" and that the "reasons cited by the police must be sufficient to create a reasonable belief that a crime has been committed"). It should not leave the accused judge to guess about which canon he is alleged to have violated. After all, it is our Code of Judicial Conduct that "establishes standards for ethical conduct for judges," and whether discipline should be imposed must be "determined through a reasonable and reasoned application of the text." Fla. Code Jud. Conduct, Preamble.
Here, although the JQC's Notice of Formal Charges alleged specific facts, it failed to allege a violation of any statute, canon, or even a general ethical principle. See majority op. at 336. The notice does not even refer to the Code of Judicial Conduct. See In re Andrews, 875 So.2d at 442 n. 3 (noting that although the Notice of Formal Charges did not specify the canons allegedly violated, the Notice of Investigation and the JQC's Findings and Recommendations did). In fact, the notice nowhere alleges that the facts stated demonstrate a violation of anything. The stipulated findings also fail to identify a specific canon. Instead, the JQC comments that it "takes a dim view of the conduct" and that it "involves a serious offense."
Although we have the ultimate duty to determine whether to accept, reject, or modify the commission's findings and recommendation of discipline, see art. V, § 12(c), Fla. Const., it is not our duty to scan the Code for a canon that may apply. Yet the majority does exactly that. It concludes that "it appears that Judge Diaz has conceded he violated Canon 1 and Canon 2 of the Code of Judicial Conduct." Majority op. at 337. But Judge Diaz conceded no such thing. The stipulation merely accepted the factual allegations in the notice. Similarly, in the stipulation, Judge Diaz "acknowledges that his conduct was entirely inappropriate and he expresses his remorse for this conduct." He also promises that "there will be no repetition of such acts." But he never stipulates that he violated a specific canon of the Code.
Let us review the stipulated facts the JQC found so troubling. Judge Diaz sent an anonymous email to Judge Seidman alleging that he had, in the past, reported to federal authorities illegal immigrants who appeared before him. The email then stated, "We remember." Apparently, Judge Seidman construed the message as an implicit threat. But even the JQC apparently admits that it was not a threat of physical harm or revelation of wrongdoing or personally embarrassing information; nor was it a threat of retaliation intended to influence a case in which the other judge presided. According to the JQC, the threat was of "retaliation at the polls from those of Hispanic ancestry." In other words, because Judge Seidman had reported illegal aliens to federal authorities, members of the Hispanic community might vote against him in the next election. The JQC deemed Judge Diaz's subsequent sending of this public, apparently true, information about Judge Seidman to an *341 Hispanic bar association as "exacerbat[ing]" the unidentified ethical offense.
The JQC did not identify a single judicial canon that Judge Diaz's actions violated, and I cannot agree to discipline a judge based on conduct that, in my view, does not violate a specific canon. "[F]or this Court to act blindly on a stipulation and recommendation ... reduces the Court to little more than a rubber-stamp in the review process." In re Fletcher, 664 So.2d 934, 936 (Fla.1995). Accordingly, I would remand the case to the Commission for it to specify the canons violated, if any, and the conduct that violated each.

B. The Discipline Imposed
Even assuming that Judge Diaz's conduct violated a specific canon, the recommended discipline  a $15,000 fine, a two-week suspension, a public apology, and a public reprimand  is much too harsh. Unless there are facts of which we are unaware, the facts found by the Commission and presented for our review are incongruent with its recommendation on discipline. As I previously stated, the parties' stipulation notwithstanding, this Court may accept, reject, or modify the JQC's recommendations. See Fla. Jud. Qual. Comm'n R. 6(j). I would eliminate all but a reprimand issued by opinion.
Although the JQC suggests that its recommended discipline is less stringent than the matter warranted, I find the opposite is true. A comparison with other cases illustrates the disparity between the conduct and the recommended discipline. For example, in an interview with a newspaper reporter regarding a case pending before him, a judge made several biased comments about the defendant and the merits of its litigation strategy. In re Andrews, 875 So.2d 441, 441 (Fla.2004). We agreed with the JQC that the conduct violated Canons 1, 2, and 3. We imposed the recommended discipline  a public reprimand. Similarly, in In re Angel, 867 So.2d at 379, the judge stipulated to seven violations of Canon 7 and a statute, which were based on his conduct during his 2002 election campaign. Noting that the case did not involve implications that the judge would "make partisan decisions on the bench," we agreed that no fine was needed and again approved the JQC's recommendation of a public reprimand. Id. at 383. In In re Schapiro, 845 So.2d 170 (Fla.2003), the judge stipulated to ten violations based on his unseemly, rude, arrogant, and intemperate behavior towards attorneys and litigants in his court over a period of years. We found the judge's conduct "clearly undermined the public's confidence in and respect for both the integrity of the judicial system and Judge Schapiro as a judge" and concluded these violations were "extreme in their seriousness, in their number, and in the length of time over which they occurred." 845 So.2d at 173-74. Yet, in view of the judge's participation in behavioral therapy, we held that his appearance in our Court for a public reprimand and letters of apology were sufficient discipline. Finally, in In re Holloway, 832 So.2d 716 (Fla.2002), we found several violations, including making misleading statements in a sworn deposition and angrily confronting and crudely upbraiding another judge in a hearing room about his handling of an ongoing case, in which the offending judge had an emotional involvement and had appeared as a witness. Noting the judge's acceptance of responsibility for her misconduct and evidence that she was otherwise an able judge, we imposed a public reprimand and a thirty-day suspension without pay. The conduct in each of these cases was much more egregious than the conduct at issue here.
In this case, the JQC noted that Judge Diaz took responsibility for his actions and *342 that he had no prior disciplinary history. Yet it recommended a fourteen-day suspension without pay, a $15,000 fine, a public reprimand by this Court, and a "public apology" to Judge Seidman and the Hispanic Bar Association of Broward County "in a form suitable to the Commission." I shudder to think what the JQC would have recommended had Judge Diaz not accepted responsibility.
The dissonance between the conduct and recommended discipline in this case as compared with these other cases is striking. The incident here was isolated. It did not implicate either Judge Diaz's or Judge Seidman's impartial performance of judicial duties. Judge Diaz had no previous disciplinary incidents, admitted the misconduct, was remorseful, and promised it would not happen again. The discipline should not exceed what we imposed on Judges Andrews, Angel, and Schapiro. Therefore, even assuming Judge Diaz violated a canon of the Code of Judicial Conduct (which the JQC could not identify), I would modify the recommended discipline by eliminating all but a reprimand issued by opinion.
For these reasons, I respectfully dissent.
PARIENTE, C.J., concurs.
NOTES
[1] Canon 1 states in pertinent part:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2 states in pertinent part:
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge.