PER CURIAM.
We review the findings, conclusions, and recommendation of the Judicial Qualifications Commission (JQC) concerning Lee County Judge James R. Adams. We have jurisdiction. See art. V, § 12, Fla. Const. We approve the parties’ stipulation to allegations that Judge Adams had an inappropriate romantic relationship with an attorney who was practicing before him and the JQC’s finding that this misconduct violated three canons of the Code of Judicial Conduct. We also approve the stipulated discipline of a public reprimand.
FACTS
The JQC charged that during 2004 Judge Adams violated three canons of the Code of Judicial Conduct by having a romantic relationship with an attorney who appeared before him “in a considerable number of cases.” The allegations specified that Judge Adams granted numerous continuances requested by the attorney in five cases, and that Judge Adams dismissed the charges in four traffic cases in which the attorney represented the defendant. Judge Adams admitted the allegations in a preliminary hearing before the JQC Investigative Panel and again in a formal stipulation. Based on the stipulation, the Investigative Panel concluded that Judge Adams violated Canons 1, 2, and 3 of the Code of Judicial Conduct and recommended a public reprimand.
Canon 1 provides in full:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2A provides in pertinent part that a judge “shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Canon 2B states that a judge “shall not allow family, social, political or other relationships to influence the judge’s judicial conduct or judgment.” Canon 3B(5) provides that a judge “shall perform judicial duties without bias or prejudice.” Canon 3B(8) specifies that a judge “shall dispose of all judicial matters promptly, efficiently, and fairly.”
REVIEW OF JQC FINDINGS
This Court may “accept, reject, or modify in whole or in part” the findings and conclusions of the JQC. Art. V, § 12(c)(1), Fla. Const. Judge Adams has admitted the alleged wrongdoing and does not dispute the JQC’s findings. Accordingly, we conclude that the findings are supported by clear and convincing evidence, the level of proof necessary to impose discipline. See In re Diaz, 908 So.2d 334, 337 (Fla.2005) (stating that Court will ordinarily accept undisputed facts and admissions of wrongdoing as sufficient proof by clear and convincing evidence).
We further conclude that this misconduct was in violation of the three canons specified above. A judge who enters into a romantic relationship with a lawyer who practices before the judge, and then continues to preside over matters in which the lawyer appears as counsel, transgress *1027 es the Code of Judicial Conduct in both letter and spirit. Judge Adams failed to maintain the high standards of conduct necessary to preserve the integrity of the judiciary, violating Canon 1. He also failed to act in a manner promoting public confidence in the judiciary, violating Canon 2A. Further, his conduct tended to create the impression that he allowed a personal relationship to influence his judgment, contrary to Canon 2B, and that he would have difficulty performing his judicial duties fairly and without bias, contrary to Canons 3B(6) and 3B(8).
Even in the absence of evidence that a romantic relationship with an attorney practicing in a judge’s court has influenced the judge’s judgment, the judge’s authority necessarily suffers. First, the intimate relationship itself is contrary to the judge’s role of maintaining detached neutrality as to the litigants and lawyers who appear in his or her courtroom. Second, in continuing to preside over cases in which the lawyer appears during the relationship, the judge necessarily depletes the single most important source of his or her authority— the perception of the legal community and public that the judge is absolutely impartial in deciding cases.
The Commentary to Canon 2A addresses misconduct creating an appearance of impropriety:
Irresponsible or improper conduct by judges erodes public confidence in the judiciary. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny....
... The test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge’s ability to carry out judicial responsibilities with integrity, impartiality, and confidence is impaired.
As we have stated in ordering the discipline of a judge for failing to disclose that counsel appearing before him was representing a member of the judge’s family in a hotly contested case, “Judges must do all that is reasonably necessary to minimize the appearance of impropriety. They must remain cognizant of the fact that even in situations where they personally believe that their judgment would not be colored, public perception may differ.” In re Frank, 753 So.2d 1228, 1240 (Fla.2000).
In his appearance before the JQC Investigative Panel, Judge Adams acknowledged that he should not have entered into the relationship. This exercise of 20-20 hindsight aside, our chief concerns in fulfilling our duties under article V, section 12 are the effect of this relationship on the integrity of the judiciary and the administration of justice. In the stipulation, Judge Adams admitted that the continuances he granted to the attorney with whom he was involved caused his impartiality to be brought into question. Judge Adams also acknowledged that at the very least, the continuances and dismissals created the appearance of impropriety. We wholeheartedly agree. Accordingly, we conclude that Judge Adams violated Canons 1, 2, and 3 of the Code of Judicial Conduct by failing to personally observe high standards of conduct, by creating the appearance that a personal relationship influenced his judgment, and by creating the appearance of bias in the performance of his judicial duties.
RECOMMENDED DISCIPLINE
This Court is empowered to accept, modify, or reject the JQC’s recommendations and “order that the ... judge be subjected to appropriate discipline.” Art. V, § 12(c)(1), Fla. Const. In reaching *1028 agreement with Judge Adams on the recommended sanction, the JQC Investigative Panel noted that Judge Adams accepted full responsibility for his misconduct during the relationship, which lasted for approximately two months, admitted that it should not have occurred, and regrets and apologizes for the misconduct. Further, the JQC recognized that Judge Adams has an otherwise unblemished record as a judge and is active in his community. Finally, from our review of the record, we conclude that there is no evidence that the relationship actually influenced his actions in any of the cases involving the attorney. If evidence had demonstrated that the relationship affected the disposition of any matter before the judge, we would not hesitate to impose stiffer discipline. On the record before us, we agree that the appropriate sanction is a public reprimand by this Court, which we have scheduled by separate order for June 7, 2006.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.