PER CURIAM.
We have for review a stipulation between the Judicial Qualifications Commission (“JQC”) and Judge Brandt C. Downey, III, as well as the JQC’s recommendation that Judge Downey be publicly reprimanded for violating the Code of Judicial Conduct. We have jurisdiction. See art. V, § 12, Fla. Const. We accept the stipulation and approve the JQC’s recommendation.
FACTS
On December 20, 2005, the JQC filed a notice of formal charges against Judge Downey. This notice charged Judge Dow-ney with three counts of ethical violations for conduct that occurred between 2002 and 2005. Judge Downey was charged with violating canons 1, 2, and 3B(5) of the Judicial Code of Conduct.[1] In relevant part, the JQC’s notice of formal charges set forth the following:
I.Habitual viewing of pornography from the courthouse computer[.]
1. Beginning on or about the year 2002, and continuing through 2005, you engaged in the practice of viewing pornographic Internet websites from the computer in your chambers.
2. Your pervasive practice of viewing pornography from the computer in your chambers resulted in frequent computer viruses infecting your computer. Courthouse anti-virus software quarantined the viruses on your computer which in turn, had to be removed by technology staff members either from a remote location or in person by reporting to your office to remove the viruses from your computer.
3. As a result, on at least two occasions, courthouse personnel were unwittingly exposed to pornographic images when they reported to your office to physically remove viruses from your computer. In addition, on at least one known occasion, your Judicial Assistant was also exposed to a pornographic website image while present in your office during a computer repair service call.
4. You repeatedly ignored e-mail warnings such as the one below from *646 court technology staff, advising you of the potential risk to the entire computer network due to your viewing of certain websites:
“Judge Downey, again our Antivirus Server alerted our staff that your computer has multiple viruses. One of the technology staff members will either stop by to clean the virus or we may be able to clean the virus from the server. Please understand that viruses can be found in emails or Internet sites. Many Internet sites carry viruses and just by clicking on a link or popup window could infect your computer. Please be careful about the sites you visit and realize that the virus you encounter could infect our entire network ....”•
(Emphasis added).
These acts, if they occurred as alleged, were in violation of Canon, 1, [sic] by failing to maintain a high standard of conduct to preserve the integrity of the judiciary. Furthermore, these acts, if true, violate Canon 2A by eroding the public confidence and integrity in the judiciary through your pervasive conduct of viewing pornography in your chambers and thereby threatening to infect the entire courthouse computer system with unwanted computer viruses.
II. Failure to disclose a juror written communication.
5. In the case of State v. Wilson, (Case No.:CRC-03-00026CFANO-K) you failed to advise the lawyers representing the State of Florida and the defendant that you had received a written communication from a juror during the trial. The handwritten note from the juror allegedly advised you that said juror was concerned about a fellow juror sleeping during the trial and was further concerned about the fairness of the proceedings due to the sleeping juror.
6. You failed to disclose the note to the lawyers even after defense counsel, who independently learned of the sleeping juror, requested a continuance of the sentencing hearing to explore legal options on behalf of Mr. Wilson. In addition to denying the continuance, you also conducted legal research and cited to Foraker v. State, 731 So.2d 110 ([Fla.] 5th DCA 1999)[,] in support of your decision to proceed with the sentencing of Mr. Wilson notwithstanding the sleeping juror. In so ruling, you stated that there was insufficient evidence of the sleeping juror to require a hearing. You made this representation knowing that you had direct evidence in the form of a juror communication evidencing that a fellow juror had in fact seen the juror sleeping during the trial.
7. Defense counsel learned about the juror communication after the courtroom bailiff who received the note from the juror reported the existence of the note to the State Attorney’s Office who in turn notified defense counsel.
8. You claim to have destroyed the note instead of producing the note to the lawyers or placing the note in the court file. The withholding of the juror communication in. this case led to your disqualification.
The acts as described above if they occurred as alleged, are in violation of Canon 1, by failing to uphold the integrity and independence of the judiciary[,] and Canon 2, by failing to comply with the law in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
III. Improper contact and communication with female attorneys.
9. During 2003 through 2004 you displayed an inordinate interest in a first year female assistant state attorney assigned to Judge Linda R. Allan’s divi *647 sion. As such, you repeatedly sent quick conference computer messages to Judge Allan regarding said assistant state attorney’s appearance. You also asked Judge Allan to “pass” a case to you involving this same prosecutor. Further, you asked Judge Allan to advise the prosecutor that her case was coming to your division so that you could in turn, watch her reaction to the news on your computer screen. In addition, you sat in the audience and watched said assistant state attorney in trial on more that one occasion]!]
10. On another occasion you asked said assistant state attorney to approach the bench while court was in session and told her she “looked nice today.” In addition, you approached her in front of other people and told her she “looked pretty.”
11. Furthermore, you also telephoned the assistant state attorney in her office and invited her to have lunch or dinner with you, to which she declined.
12. Your behavior toward said assistant state attorney embarrassed her and caused others to mock and ridicule her. The acts as described above if they occurred as alleged, are in violation of Canon 1 and 2A as outlined above and in violation of Cannon [sic] 3B(5) requiring that a judge perform judicial duties without bias or prejudice including but not limited to bias or prejudice based on gender.
13. Furthermore, your inappropriate conduct toward the unnamed assistant state attorney described above is not an isolated incident. On March 23, 2005, you asked another female attorney to approach the bench while court was in session to engage in a personal conversation with her. In addition, you authored an e-mail message later that same day wherein you stated: “IT WAS NICE SEEING U IN COURT LOOKING SO PRETTY — LOOK FORWARD TO SEEING U SOON IN COURT, OR OUT — BEST REGARDS, JUDGE D[.]”
14.Moreover, on April 6, 2005[,] you sent the same female attorney the following message: “WAS GREAT SEEING U LAST NIGHT AND AGAIN TODAY TOO — U LOOKED GOOD ENUF TO — OH WELL, WISHFUL THINKING — C U SOON I HOPE[.]”
• The acts as described above' if they occurred as alleged, are in violation of Canon 1, 2A and Cannon [sic] 3B(5) as outlined in paragraph 12 above.
On May 26, 2006, the JQC and Judge Downey presented a stipulation to this Court in which Judge Downey admitted count I but denied counts II and III.[2] In addition to receiving a public reprimand, the stipulation requires that Judge Dow-ney (1) retire from judicial office at the end of his term on January 1, 2007; (2) not serve as a senior judge; (3) provide a formal letter of apology; (4) continue to have restricted email and internet access; (5) continue his psychological counseling; and (6) not file for reelection and never again seek election or appointment as a judge.[3] The stipulation also provides that Judge Downey will sign a letter of resigna *648 tion that will take effect immediately should the JQC find probable cause to charge him with any additional ethical violations or should he fail to abide by the other terms of the stipulation. Finally, the stipulation recites the JQC’s disciplinary recommendations. In a separate filing, the JQC presented its recommendations and findings specifying that Judge Downey has been found guilty of count I. Neither the stipulation nor the JQC’s separate filing explains why counts II and III are not being pursued further or why the JQC considered the recommended discipline appropriate. These deficiencies in the filings prompted this Court to order the JQC and Judge Downey to appear before it on June 29, 2006, for further inquiry.
At this appearance, the JQC explained that Judge Downey’s long, unblemished record of service as a county and circuit court judge from 1984 until 2002 weighed heavily in its decision to enter into the stipulation. Significantly, the JQC found that Judge Downey’s conduct had not influenced his judicial actions and that, “based upon [his] long term of otherwise effective judicial service and the appropriate limitations on that service” that were imposed subsequent to the alleged misconduct, his conduct did not demonstrate a present unfitness to hold office. The JQC also considered the fact that, pursuant to his agreement with Chief Judge David A. Demers, Judge Downey voluntarily sought psychological counseling. Finally, it found that Judge Downey was remorseful.
As to counts II and III, the JQC did not believe these serious charges had been disregarded or improperly minimized. Regarding count II, after conducting further investigation, the JQC concluded that Judge Downey’s conduct was “more a matter of judicial error than judicial misconduct” and did not pursue this charge any further. As for count III, the JQC ultimately determined that further proceedings to prove these charges would not be prudent because the stipulation ensured Judge Downey’s permanent removal from office as of January 1, 2007. In addition, as an interim protection, if the stipulation is breached or further misconduct occurs, Judge Downey would cease to serve immediately. Lastly, the JQC clarified that Judge Downey will serve the remainder of his term in the civil division of the circuit court and will not preside over criminal cases.
In his appearance before this Court, Judge Downey clarified that he had never formally answered counts II and III but had never denied them. Further, he admitted to the communications with the two female attorneys and agreed that these communications were improper, but dis *649 puted the characterization of these communications as rising to the level of sexual harassment.[4] Judge Downey also informed the Court that while the qualifying period to seek reelection expired in May, he could still qualify to run for a newly created position until July 15, 2006. However, he made it clear that he had no plans to seek reelection. Judge Downey also explained that his early retirement and inability to serve as a senior judge essentially worked as a monetary sanction because he would forfeit approximately $600,000 worth of benefits.
DISCUSSION
The JQC asks this Court to approve its stipulation with Judge Downey as well as its disciplinary recommendation. While we remain deeply troubled by the charges as filed, particularly those in count III, we approve the stipulation and the JQC’s disciplinary recommendation. We do so because under the facts and circumstances of this ease, the stipulation presents a reasonable, expeditious, and assured way of securing Judge Downey’s permanent removal from office.
1. Standard of Review
In considering whether to approve or reject a stipulation entered between the JQC and a judge, we consider both the terms of the stipulation and the findings of the JQC. In re Angel, 867 So.2d 379, 382-83 (Fla.2004). “This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved.” In re Andrews, 875 So.2d 441, 442 (Fla.2004). Clear and convincing evidence is the standard of proof required “to support the alleged ethical violations— a standard of proof which has been described as ‘more than a preponderance of the evidence, but the proof need not be beyond and to the exclusion of a reasonable doubt.’ ” In re Kinsey, 842 So.2d 77, 85 (Fla.2003) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)); accord Angel, 867 So.2d at 382., “In cases where a judge admits to wrongdoing and the JQC’s findings are undisputed this Court will ordinarily conclude that the JQC’s findings are supported by clear and convincing evidence.” In re Diaz, 908 So.2d 334, 337 (Fla.2005). We have also recognized that a judge’s “own admissions” of the misconduct and impropriety of that conduct “bolster the JQC’s findings, which we give great weight as we consider its recommendation of discipline.” Angel, 867 So.2d at 383 (citing In re Rodriguez, 829 So.2d 857, 860 (Fla.2002); In re McMillan, 797 So.2d 560, 566 (Fla.2001)). We give the disciplinary recommendation of the JQC great weight but recognize that “the ultimate power and responsibility in making a determination rests with this Court.” Kinsey, 842 So.2d at 85 (quoting Davey, 645 So.2d at 404); accord Angel, 867 So.2d at 382-83.
2. Analysis
a. Stipulation and Findings Supporting Ethical Violations
Under the terms of the stipulation, Judge Downey admits both the conduct *650 and its impropriety as alleged in count I. On this basis, the JQC finds Judge Dow-ney guilty of violating canons 1 and 2A of the Code of Judicial Conduct as alleged in count I. We conclude that there is clear and convincing evidence to support the JQC’s finding. In addition, as to count II, we accept the JQC’s decision not to pursue this charge. As to count III, given Judge Downey’s oral admission that his communications with two female attorneys were inappropriate, that admission may be considered in our review of the recommended discipline. In this light, we next consider whether we should approve the JQC’s disciplinary recommendation.
b. Disciplinary Recommendation
We approve the disciplinary recommendation of the JQC. In so doing, we must first clarify several important points. First, while “[t]his Court may ‘accept, reject, or modify in whole or in part’ the findings and conclusions of the JQC,” In re Adams, 932 So.2d 1025 (Fla. May 18, 2006) (quoting art. V, § 12(c)(1), Fla. Const.), we cannot modify a stipulation between the JQC and a judge. We may only accept or reject it. Thus, while we are well aware of the seriousness of the allegations in count III, other than the obvious impropriety of the communications later admitted to by Judge Downey in his appearance before us, those allegations are otherwise denied. Therefore, though we consider Judge Dow-ney’s oral admissions to this Court in deciding whether to accept the stipulation, we do not have the power to modify the terms of the stipulation and impose a harsher sanction.
Second, the stipulation was entered into in lieu of conducting a formal hearing on any of the charges. If we were to reject the stipulation, the adjudicatory process would continue and most likely remain unresolved by January 1, 2007. In addition, the outcome of the adjudicatory process would be uncertain. Moreover, if we were to reject the stipulation, Judge Downey would be free to qualify and run again for judicial office. Thus, the practical and definitive effect of accepting the stipulation and the JQC’s recommendation is that it ensures that Judge Downey will no longer serve as a judge after January 1, 2007. Until that date certain, Judge Downey will preside over civil cases only and do so with the prospect of immediate removal as set forth in the stipulation. In light of this, we now consider the JQC’s recommendation.
Pursuant to the stipulation, the JQC based its disciplinary recommendation on Judge Downey’s admission to the ethical violations charged in count I. We have found that a public reprimand is appropriate in cases involving violations of canons 1 and 2 where there is significant mitigation, the incidents of misconduct are isolated, and the alleged misconduct did not affect the judge’s office. For instance, in Adams, 932 So.2d 1025, we found that a public reprimand was an appropriate sanction where a judge became involved in a romantic relationship with an attorney practicing before him in violation of canons 1, 2, and 3. As we explained,
In reaching agreement with Judge Adams on the recommended sanction, the JQC Investigative Panel noted that Judge Adams accepted full responsibility for his misconduct during the relationship, which lasted for approximately two months, admitted that it should not have occurred, and regrets and apologizes for the misconduct. Further, the JQC recognized that Judge Adams has an otherwise unblemished record as a judge and is active in his community. Finally, from our review of the record, we conclude that there is no evidence that the relationship actually influenced *651 his actions in any of the cases involving the attorney. If evidence had demonstrated that the relationship affected the disposition of any matter before the judge, we would not hesitate to impose stiffer discipline.
932 So.2d at 1027-28; see also In re Cope, 848 So.2d 301, 304 (Fla.2003) (finding that public reprimand was appropriate sanction given judge’s “sincere remorse and his exemplary performance as a judge” where judge admitted to incident of public intoxication and inappropriate conduct of an intimate nature while attending an out-of-state judicial conference at taxpayers’ expense); In re Esquiroz, 654 So.2d 558, 559 (Fla.1995) (finding that public reprimand was appropriate sanction where judge pled nolo contendere to DUI charge, admitted violating canons 1 and 2A, and expressed remorse and JQC determined incident was isolated).
Similarly, the JQC has found significant mitigation in this case. It determined that Judge Downey’s misconduct occurred at the end of an otherwise long and unblemished record of judicial service. His judicial service began in 1984 and was unmarred until 2002. Judge Downey admitted to and accepted responsibility for his actions as alleged in count I. He admitted to habitually viewing pornography from his computer. In addition, he has admitted to engaging in inappropriate conduct towards two female attorneys. He voluntarily sought psychological counseling. And he has shown sincere remorse. He is stipulating not only to a public reprimand but also to permanent retirement from the bench effective January 1, 2007. Finally, the JQC found no evidence that Judge Downey’s misconduct affected his judicial office.
Under the unique facts and circumstances of this case, the JQC’s finding that Judge Downey’s admitted misconduct did not interfere with his judicial decision making will not be disturbed by this Court. Although the allegations of sexual harassment contained in count III are extremely serious and very disturbing to this Court, we again note that this count as charged has been denied and remains unproven. Nonetheless, we also recognize that the JQC and Judge Downey have not totally ignored the allegations in count III. Rather, in light of count III, the JQC has recommended and Judge Downey has stipulated to a much harsher sanction than a public reprimand and apology. In lieu of a formal hearing on count III, Judge Dow-ney has agreed to retire at the end of his current term of office and to be permanently barred from serving as a judge in Florida. According to Judge Downey, this inability to serve beyond January 1, 2007, will result in the loss of significant income otherwise available to him. Considering the foregoing, we approve the stipulation and accept the JQC’s disciplinary recommendation as appropriate under the circumstances of this case.
We reiterate that, pursuant to the terms of the stipulation, if Judge Dow-ney engages in further misconduct, he must immediately resign. Moreover, we also note that the retired status of a judge does not deprive the JQC of its jurisdiction so long as a complaint is filed within one year after retirement. Art. V, § 12(a)(1), Fla. Const. Likewise, retirement does not deprive this Court of jurisdiction. In re Frank, 753 So.2d 1228, 1230 n. 1 (Fla.2000) (citing In re Hapner, 718 So.2d 785, 787-88 (Fla.1998)) (relying on article V, section 12 of the Florida Constitution to exercise jurisdiction over a case where the judge had already resigned from the bench).
Accordingly, we approve the stipulation, and, in accordance with the policy announced in Frank, 753 So.2d at 1242, we hereby command Judge Brandt C. Dow- *652 ney, III to appear before this Court for the administration of a public reprimand on Friday, September 22, 2006, at 8:30 a.m., as directed by this Court in our corrected June 30, 2006, order.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

. Canon 1. A Judge Shall Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2. A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge’s Activities
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3. A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently
B. Adjudicative Responsibilities.
(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject' to the judge’s direction and control to do so. This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in the proceeding.

. This stipulation was presented pursuant to article V, section 12 of the Florida Constitution and Florida Judicial Qualifications Commission Rule 6(j).

. As recited in our June 30, 2006, order, the stipulation provides in applicable part:
(i)Judge Downey may retain his position as Circuit Judge until the end of his term on Jamiary 1, 2007, at which time he will retire;
(ii) After his retirement pursuant to this stipulation, Judge Downey will not serve as a Senior Judge and will not seek appointment or election as a judge;
(iii) Judge Downey shall sign and provide to the Florida Judicial Qualifications Com *648 mission a letter of apology to the public, his fellow judges, and the legal community for his actions which have resulted in this case, which letter the Commission may distribute to the public;
(iv) Judge Downey's restricted access to email and the internet at the courthouse shall continue to remain in place until his retirement;
(v) Judge Downey shall continue his present counseling until such time as his counselor releases him. A copy of such release will be provided to the Florida Judicial Qualifications Commission;
(vi) Judge Downey shall personally appear before this Court to receive a public reprimand at a date and time to be determined by this Court;
(vii)Judge Downey shall sign a letter of resignation to take effect upon the finding of probable cause by the Florida Judicial Qualifications Commission of (1) any violation of the Code of Judicial Conduct other than the conduct set forth in the notice of formal charges or (2) Judge Downey's failure to abide by the terms of this stipulation;
(viii) Judge Downey shall not file for reelection even if this Court has not ruled on this stipulation prior to the end of the qualifying period for the next election.

. As to the assistant state attorney, Judge Downey told this Court that after he was confronted by Chief Judge Demers, he had no further communications with the attorney, and she did not file any formal charges against him. He characterized his pursuit of her as overactive mentoring and denied asking Judge Allan to transfer the state attorney’s cases to his division. He clarified that he had contacted Judge Allan regarding transferring a case to his division when asked to do so by the administrative criminal judge because Judge Allan was overbooked. As to the second attorney, he admitted that he was attempting to establish a social relationship with her and that this was improper. However, she had not filed any formal charges.