PER CURIAM.
We have for review a stipulation between the Judicial Qualifications Commission (“JQC”) and Judge Mary Jane Henderson, as well as the JQC’s findings and recommendation that Judge Henderson be publicly reprimanded for violating the Code of Judicial Conduct. We have jurisdiction. See art. V, § 12, Fla. Const. As explained in detail below, we accept the stipulation and approve the JQC’s findings and recommended sanction.
I. PROCEDURAL HISTORY AND FACTS
A. Proceedings Before the JQC
This action arose when, on September 8, 2008, the JQC served a Notice of Investigation on Volusia County Judge Mary Jane Henderson pursuant to Rule 6 b of the Florida Judicial Qualifications Commission Rules. The Notice of Investigation stated in pertinent part that it had been alleged that Judge Henderson violated Canons 1, 2 A, 2 B, and 5 A of the Code of Judicial Conduct. Among specific allegations being investigated were allegations that Judge Henderson had formed a relationship with Henry Wheeler, formerly a defendant in her court and a convicted felon with substance abuse problems. The Notice of Investigation alleged that within the relationship or association, Judge Henderson had taken actions that undermined the integrity of her judicial office. The conduct alleged to have undermined confidence in the judicial office included that Judge Henderson used her position to procure a lease of an apartment for Wheeler where the landlord would not otherwise have leased to him; held moneys for Wheeler; purchased a cell phone for Wheeler; loaned Wheeler money on occasion; and purchased a truck for him.
The Notice of Investigation also stated that during Judge Henderson’s association with Wheeler, he came to Judge Henderson’s residence on April 26, 2007, at 4:15 a.m. and caused a disturbance necessitating a call to 911, although Judge Henderson later advised law enforcement that an officer need not respond. The Notice of Investigation also cited allegations that Wheeler was allowed into Judge Henderson’s chambers on May 11, 2007, where he created a disturbance. After he was physically removed, Judge Henderson informed an officer from the New Smyrna Beach Police Department that she did not wish to give a statement.
Judge Henderson filed a written response to the Notice of Investigation on October 2, 2008. On that same date, a hearing was held before the JQC Investí- *61 gative Panel in Tampa, Florida, at which Judge Henderson appeared and presented testimony. Ultimately, the JQC inquiry resulted in an August 5, 2009, stipulation between the JQC and Judge Henderson. After the JQC and Judge Henderson entered into the stipulation, the Investigative Panel issued its Findings and Recommendation of Discipline, also dated August 5, 2009, and the panel waived a plenary hearing on the charges. On August 6, 2009, the JQC filed a Notice of Formal Charges,[1] the Findings and Recommendation of Discipline, and the stipulation in this Court. We first examine the findings supporting the stipulation and the disciplinary recommendation.
B. Facts
At the hearing before the Investigative Panel on October 2, 2008, Judge Henderson testified in pertinent part that after Wheeler no longer had any cases before her, she came to know him and his mother personally. Based on the friendship that developed, and because she truly wanted to assist Wheeler to turn his life around, she agreed to act as his friend and mentor and to assist him in living a straight, sober, and productive lifestyle. She assisted in finding him an apartment and met with the landlord, who recognized her as a judge. Judge Henderson assured the landlord that there would be no problem with payment of the rent. Although the landlord did not wish to do so, he did lease the apartment to Wheeler after meeting with Judge Henderson. Judge Henderson also testified that she loaned Wheeler almost $4000 to buy a truck and believed he would pay her back based on their “handshake deal.” She also purchased a cell phone for him and provided him money on several occasions to pay for cab fares. Judge Henderson also agreed to hold Wheeler’s money on his behalf, requiring him to come to her to request the funds when he needed them.
Judge Henderson also testified about the occasion when Wheeler came to her residence in the early morning hours of April 26, 2007, in an impaired and disorderly state. She and her husband called 911 to report a trespass, but after Wheeler left, Judge Henderson advised law enforcement that help was no longer needed and that she would not fill out a complaint affidavit. Shortly after Wheeler left her residence, he was stopped and field-tested to determine if he was driving under the influence (DUI) but was not ultimately arrested for DUI. Judge Henderson testified that she did not intend for her statements' to police to suggest that Wheeler should not be arrested. She also testified about the incident on May 11, 2007, when Wheeler came to her residence during her lunch hour and engaged in a dispute with her, necessitating a call to her bailiff to *62 transport her back to court. The record established that on that same date, Wheeler later came to Judge Henderson’s chambers where he created a disturbance while drunk and disorderly, requiring that he be escorted from the courthouse. When Wheeler was later arrested, Judge Henderson chose not to make a statement about the incident. Finally, at the hearing before the Investigative Panel, Judge Henderson showed remorse for her conduct. She testified that she was “very sorry that my involvement with Mr. Wheeler and my attempt to fix his problems has led me to this situation.” She further stated, “I truly apologize for the conduct on my part that people saw as demeaning to my office, and it’s not going to happen again.”
The Findings and Recommendation of Discipline issued by JQC after the hearing stated in pertinent part that “Judge Henderson admits that her conduct, while well intentioned, created an appearance of impropriety in appearing to lend her judicial office to advance a private interest, thus demeaning the office.” The JQC further found that Judge Henderson’s conduct violated Canons 1, 2 A, and 2 B and 5 A of the Code of Judicial Conduct. The JQC also found that Judge Henderson “accepts full responsibility, and acknowledges that such conduct should not have occurred” and that she “now recognizes that the behavior was inappropriate and has undertaken steps to prevent their reoccur-rence.” Concluding that the judge’s conduct was misguided, although not ill-intentioned, the JQC recommended that this Court administer a public reprimand.
C. The Stipulation
After the hearing before the Investigative Panel, the JQC and Judge Henderson entered into a stipulation on August 5, 2009, in which Judge Henderson admitted that her “actions and inactions created the appearance of impropriety, thus conveying the impression that Mr. Wheeler was in a special position to influence the Judge.” Judge Henderson further stipulated that “she failed to properly appreciate that her desire to assist Mr. Wheeler could have created that perception.” In the stipulation, Judge Henderson accepted full responsibility for her conduct and expressed her regret over having become involved in attempting to help Mr. Wheeler. The stipulation states that Judge Henderson has submitted to an independent examination and has agreed to continue appropriate mental health counseling and monitoring under a separate performance agreement that she has with the JQC.
The stipulation sets forth the relevant facts established at the investigative hearing, as testified to by Judge Henderson, and which are related above and in the Findings and Recommendation of Discipline, which is part of the stipulation. Finally, the JQC and Judge Henderson agreed that a public reprimand is the appropriate discipline under the circumstances of this case. We turn now to the proper scope of review in this case.
II. ANALYSIS
A. Scope of Review
The Court may “accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [JQC].” Art. V, § 12(c)(1), Fla. Const.[2] *63 Under rule 6(j) of the Florida Judicial Qualifications Commission Rules, the Investigative Panel may reach an agreement with a judge stipulating to the findings and recommendation as to discipline, and that stipulation shall be transmitted directly to the Supreme Court for review, as occurred here. See Fla. Jud. Qual. Comm’n R. 6(j).[3] When considering whether to approve a stipulation between the JQC and a judge, this Court will consider both the terms of the stipulation and the findings of the JQC. See In re Downey, 937 So.2d 643, 649 (Fla.2006).
“This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved.” In re Pando, 903 So.2d 902, 903 (Fla.2005). “In cases where a judge admits to wrongdoing and the JQC’s findings are undisputed this Court will ordinarily conclude that the JQC’s findings are supported by clear and convincing evidence.” In re Diaz, 908 So.2d 334, 337 (Fla.2005). A judge’s admission of the misconduct and the impropriety of that conduct “bolsterfs] the JQC’s findings, which we give great weight as we consider its recommendation of discipline.” In re Angel, 867 So.2d 379, 383 (Fla.2004). Although we give the disciplinary recommendation of the JQC great weight, and we give full consideration to the provisions of the stipulation, “the ultimate power and responsibility in making a determination rests with this Court.” In re Kinsey, 842 So.2d 77, 85 (Fla.2003) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)); accord Angel, 867 So.2d at 382-83.
B. The Findings of the JQC
After a complete review of the record in this case, we conclude that there is clear and convincing evidence to support the JQC’s findings, and that the findings support the stipulation of the JQC and Judge Henderson. In its Findings and Recommendation of Discipline, the JQC found that Judge Henderson’s conduct violated Canons 1, 2 A, 2 B, and 5 A of the Code of Judicial Conduct in that it “created an appearance of impropriety in appearing to lend her judicial office to advance a private interest, thus demeaning the office.” Thus, we turn to an examination of the requirements of the Canons of Judicial Conduct at issue here.
Canon 1 of the Code of Judicial Conduct provides in pertinent part:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provi *64 sions of this Code should be construed and applied to further that objective.
Therefore, even in private life, a judge must strive to enforce high standards of conduct by always personally observing those standards. As the commentary to Canon 1 explains:
Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.
Fla.Code of Jud. Conduct, Canon 1 cmt. We conclude that clear and convincing evidence supports the JQC’s finding that Judge Henderson’s conduct violated Canon 1. The evidence established that public confidence in Judge Henderson’s integrity was impaired by her actions and the actions of Wheeler arising out of her association with him.
Canon 2 A of the Code of Judicial Conduct states:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Fla.Code of Jud. Conduct, Canon 2 A. We have held that “[t]his provision is not an aspirational principle but a clear and unequivocal mandate.” In re Maxwell, 994 So.2d 974, 978 (Fla.2008). The commentary to Canon 2 A further explains:
Irresponsible or improper conduct by judges erodes public confidence in the judiciary. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge’s conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly....
The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge.
Fla.Code of Jud. Conduct, Canon 2 A cmt. Thus, even in private life, a judge must accept restrictions, even on well-intentioned conduct, that are not imposed on the ordinary citizen, in order to avoid both impropriety and the appearance of impropriety.
Canon 2 B of the Code of Judicial Conduct requires a judge to avoid conduct that conveys the impression that others are in a special position to influence the judge. “Moreover, a judge must not use the prestige of the judicial office to advance the private interests of the judge or others.” In re Maloney, 916 So.2d 786, 788 (Fla.2005). Canon 2 B states:
A judge shall not allow family, social, political or other relationships to influence the judge’s judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.
Fla.Code of Jud. Conduct, Canon 2 B. The record provides clear and convincing evidence that Judge Henderson’s conduct in relation to Wheeler conveyed the impression that he was in a special position to influence her; and by her conduct, she appeared to have used her judicial office to advance the private interests of Wheeler.
The JQC also found that Judge Henderson violated Canon 5 A of the Code of Judicial Conduct, which provides:
Extrajudicial Activities in General. A judge shall conduct all of the judge’s *65 extrajudicial activities so that they do not:
(1) cast reasonable doubt on the judge’s capacity to act impartially as a judge;
(2) undermine the judge’s independence, integrity, or impartiality;
(3) demean the judicial office;
(4) interfere with the proper performance of judicial duties;
(5) lead to frequent disqualification of the judge; or
(6) appear to a reasonable person to be coercive.
Fla.Code of Jud. Conduct, Canon 5 A. The finding of the JQC that Judge Henderson violated Canon 5 A is supported by clear and convincing evidence. Her association with Wheeler, and Wheeler’s actions within that association, demeaned Judge Henderson’s judicial office and interfered with the proper performance of her duties, as was evidenced by Wheeler’s disorderly conduct both at Judge Henderson’s residence and in her chambers. Her acting as his proponent in the leasing of an apartment, where the landlord knew she was a judge, may have appeared coercive to the landlord under the circumstances, in violation of Canon 5 A.
The JQC found that these foregoing Canons were violated and we conclude that this finding is supported by clear and convincing evidence in the record. Further, Judge Henderson has agreed by stipulation that her conduct, although well intentioned, resulted in violations of Canons 1, 2 A, 2 B, and 5 A of the Code of Judicial Conduct. Based on the testimony given by Judge Henderson before the JQC Investigative Panel, and by her stipulation, we conclude that the findings of the JQC are supported by clear and convincing evidence. Thus, “the Court gives the findings persuasive force and great weight in considering the JQC’s recommendation of discipline.” Maloney, 916 So.2d at 787-88. We turn now to consideration of the recommendation that Judge Henderson receive a public reprimand.
C. Recommended Discipline
In the Findings and Recommendation of Discipline, the JQC concluded that Judge Henderson’s conduct was “misguided, [but] it was not ill intentioned.” We agree with this assessment. In her written response as well as her testimony before the Investigative Panel, and in the stipulation presented to this Court, Judge Henderson has shown remorse for her poor judgment and for her failure to recognize that her conduct created the perception that Wheeler was in a position of special influence. She has also taken full responsibility for her actions and has expressed her understanding that her attempts to help Wheeler created the appearance of impropriety that impugned the integrity of her office and were completely counter to the Canons of Judicial Conduct. Under the stipulation, Judge Henderson has agreed to continue appropriate mental health counseling and monitoring and has entered into a performance agreement with the JQC. We agree with the JQC’s finding that “the interests of justice, the public welfare and sound judicial administration will be well served by a public reprimand of Judge Henderson.”
This discipline is in accord with our existing precedent in other cases involving the appearance of impropriety and impairment of public confidence in the integrity and impartiality of the judiciary. See, e.g., In re Adams, 932 So.2d 1025, 1028 (Fla.2006) (public reprimand appropriate where county court judge had relationship with lawyer who practiced before him creating the impression that the personal relationship influenced his judgment, even though it did not); Maloney, 916 So.2d at 788 (“A *66 public reprimand, as disciplinary action, is consistent with governing precedent regarding sanctions for judicial misconduct where a judge uses the prestige of judicial office to obtain favorable treatment for himself or another individual.”); In re Gridley, 417 So.2d 950, 953 (Fla.1982) (holding public reprimand warranted where the judge failed to act impartially when he injected himself and his office into a case by advocating for a defendant).
For all these reasons, we find that a public reprimand is the appropriate sanction in this case.
III. CONCLUSION
Based on the foregoing, we approve of the stipulation and the JQC’s Findings and Recommendation of Discipline, recommending that Judge Henderson receive a public reprimand. Accordingly, we hereby command Judge Henderson to appear before this Court for administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.

. The Notice of Formal Charges alleged violations of the Code of Judicial Conduct, namely: Canon 1, Canon 2 A, Canon 2 B, and Canon 5 A. The notice alleged in essence that Judge Henderson had a long-standing relationship with Henry Wheeler, and that as a result of the friendship, Judge Henderson took actions that undermined the integrity of her official office. The notice alleged that Judge Henderson assisted Wheeler in finding an apartment in New Smyrna Beach, Florida, and that because of her judicial position and statements to the landlord, the apartment was rented to Wheeler. The notice alleged that Judge Henderson held moneys for Wheeler, purchased a cell phone for him, and loaned him money for cab fares and to buy a vehicle. The notice also detailed incidents that occurred when Wheeler was drunk and disorderly at Judge Henderson’s residence and in her chambers, and the fact that Judge Henderson advised police she did not wish to make a statement. The JQC alleged that even after being warned by members of the clerk’s office that her conduct was impugning her judicial office, Judge Henderson failed to terminate her relationship with Wheeler.

. The Florida Constitution provides:
(1) The supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [judicial qualifications] commission and it may order that the justice or judge be subjected to appropriate discipline, or be removed from office with termination of compensation for willful or persistent failure to perform judicial duties or for other conduct *63 unbecoming a member of the judiciary demonstrating a present unfitness to hold office, or be involuntarily retired for any permanent disability that seriously interferes with the performance of judicial duties. Malafides, scienter or moral turpitude on the part of a justice or judge shall not be required for removal from office of a justice or judge whose conduct demonstrates a present unfitness to hold office. After the filing of a formal proceeding and upon request of the investigative panel, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry.
Art. V, § 12(c)(1), Fla. Const.

. Rule 6(j) provides:
(j) The Investigative Panel may reach agreement with a judge on discipline or disability, and such stipulation shall be transmitted directly to the Supreme Court to accept, reject or modify in whole or in part.