# Supreme Court of Florida

_____

No. SC16-970

_____

**INQUIRY CONCERNING A JUDGE NO. 15-594 RE: GREGORY HOLDER**

[July 7, 2016]

PER CURIAM.

This case is before us to review the findings, conclusions, and recommendation of the Judicial Qualifications Commission (JQC) concerning Thirteenth Judicial Circuit Judge Gregory Holder and the stipulation entered into between Judge Holder and the JQC. We have jurisdiction. See art. V, § 12, Fla. Const. We approve the parties' stipulation to allegations that Judge Holder: (1) engaged in inappropriate ex-parte communication with the Chief Assistant State Attorney for the Thirteenth Judicial Circuit, on behalf of a defendant over whose case he was presiding; and (2) made a public offer to convert the same defendant's remaining community control to probation, prior to conducting any hearing on that matter and the JQC's finding that this misconduct violated five canons of the Code of Judicial Conduct. We also approve the stipulated discipline of a public

reprimand and completion of six additional Continuing Judicial Education (CJE) training hours on topics related to ethics.

## FACTS

In its Notice of Formal Charges, the JQC accused Judge Holder of engaging in improper conduct in violation of five canons of the Code of Judicial Conduct while presiding over defendant Clay Allred's case in the Thirteenth Judicial Circuit Veteran's Court from 2015-2016.  The JQC's Notice of Formal Charges states in pertinent part:

1.  As the judicial officer assigned to the 13th Circuit Veterans' Court, you presided over the criminal case of State of Florida v. Clay Allred (Hillsborough County Case # 2014-CF-12289) from approximately January of 2015 through March of 2016.  Clay Allred's criminal case arose after a 2014 confrontation with a convenience store clerk which resulted in Mr. Allred being charged with two felony counts; discharging a firearm from a vehicle, and aggravated assault with a deadly weapon, as well as one count of criminal mischief (a misdemeanor).  Throughout the period of time that you presided over his case, Mr. Allred was represented by private legal counsel.

2.  On March 27, 2015 you accepted a no contest plea by the Defendant, Mr. Allred, and sentenced him to 24 months of community control[n.1], to be followed by 36 months of probation.

3.  As a consequence of his arrest and subsequent conviction of multiple felonies, the Defendant was expelled and later denied re-admission to the University of South Florida ("USF"), where he was working to complete his undergraduate degree, the completion of which was recommended by the Defendant's VA Medical Center staff psychologist.

4.  On November 13, 2015 you sent a letter to USF President, Dr. Judy Genshaft.[n.2]  Your letter, written on your judicial letterhead,

- 2 -

served as both a letter of recommendation for Mr. Allred, and a request for Mr. Allred to be admitted into an online only program at USF. In your letter you state,

> As the presiding Judge, I supervise Mr. Allred's daily progress within our Community Control/House Arrest sentence (sic). . . .
> I can attest to the fact that Mr. Allred has completed or exceeded all requirements in record time. In point of fact, in my 21 years as a Judge of this Circuit, I have never seen anyone so motivated to succeed and rehabilitate.
>
> ***
>
> I am formally requesting that you re-admit Mr. Clay S. Allred to the University of South Florida as an online student consistent with the recommendation of the VA treating Psychologist . . . <u>I can personally modify Mr. Allred's community control prohibiting him from ever entering the USF property</u>. Should he violate my order of Community Control and Probation, he would face a possible 20 years in the Florida State Prison. (Emphasis Supplied.)
>
> ***
>
> I personally echo the ringing endorsements contained within the many exhibits attached hereto and respectfully request that USF live up to its National Rating as the Second Most Veteran Friendly College in America.

5. The Director of the USF Office of Admissions replied to your letter informing you that Mr. Allred would not be considered for an online only undergraduate program, because no such program was available at USF. Your office received USF's reply letter on November 20, 2015.

6. At the time you wrote to the USF President on the Defendant's behalf, there was no motion to modify community control pending. Such a motion to modify a criminal sentence would have entitled all parties to be present and heard by the Court, including the defense, prosecution, and victim. In this case, your letter could be construed as making a public commitment to modify the Defendant's criminal

sentence prior to a hearing on the subject, and indeed, prior to any such motion or request being made to the court, and is improper.[n.3]

7. In 2016, after it became clear that the Defendant's March 2015 no contest plea, adjudication of guilt, and subsequent sentence on two felonies was inhibiting his ability to reapply to USF, you personally called the Chief Assistant State Attorney ("CASA") for the 13th Judicial Circuit, after first discussing the matter with the assigned Assistant State Attorney, and requested that he review the evidence against the Defendant. In attempting to persuade him that there was insufficient evidence to prove one of the charges, you tried to persuade the State to agree to allow the Defendant to have adjudication withheld. After speaking with you, the CASA called the Defendant's private legal counsel and informed him of your call and request. The CASA then called you back to say that the State would not be amenable to your request to reduce the charges. The CASA indicated that this was [sic] first time a judge had ever made such a request to him on behalf of a Defendant over whose case they were presiding. Moreover, even before the [sic] he made the no contest plea, and was sentenced on the initial charges, the Defendant's own legal counsel made numerous appeals to the CASA, and the in-court ASA, on essentially the same grounds, which the State did not agree with.

> [N.1] Community Control is a stricter form of probation, limiting a defendant to house arrest allowing only travel to church, school, work, and medical care, and where the probation officer, or court, must approve any travel to any other places.
>
> [N.2] The letter to President Genshaft was received by USF on November 16, 2015.
>
> [N.3] Coincidentally, on November 20, 2015, the Defendant's private attorney filed a pleading styled a "Motion to Modify Community Control to Probation," in which the Defendant, through his attorney, requests a modification of his sentence so that the 24 months of community control [house arrest] could be converted into the less restrictive regular probation. The motion

- 4 -

explains that the conditions of the Defendant's community control, as well as his extensive treatment regimen, were preventing the completion of his undergraduate degree. On January 8, 2016, you conducted a hearing on this motion, and you granted, over the State's objection, the Defendant's request to modify his sentence.

Following an investigative hearing, Judge Holder entered into a factual stipulation with the JQC admitting the charges, apologizing for his improper conduct, and accepting the public reprimand and six additional hours of CJE training as recommended by the panel. Based on the Stipulation, the Investigative Panel concluded that Judge Holder violated Canons 1[1], 2A[2], 2B[3], 3B(7)[4], and

---

1. Canon 1 states: "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved."

2. Canon 2A states in pertinent part that a judge "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. Canon 2B states that "a judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment."

4. Canon 3B(7) states in pertinent part that "[a] judge shall not initiate, permit, or consider ex parte communications . . . ."

3B(9)[5] of the Code of Judicial Conduct.  Thereafter, the JQC panel made its

findings and recommendations of discipline, in which it stated:

> After an inquiry that included sworn testimony by Judge Holder before the Investigative Panel of the JQC, the Commission has now entered into a Stipulation for Discipline with Judge Holder in which he admits that his conduct was inappropriate and should not have occurred.  He further acknowledges that his conduct violates canons 1, 2A, 2B, 3B(7), and 3B(9) of the Code of Judicial Conduct.  A full recitation of the relevant facts is provided in the Notice of Formal Charges, filed concurrently with these Findings, and the Stipulation of Discipline entered into by the Commission and Judge Holder.
>
> Judge Holder accepts responsibility for his behavior, and is mindful that while he intended only to help the defendant, an Army Green Beret who received the Bronze Star Medal for service in Afghanistan, his actions went too far, and created the appearance of impropriety and partiality.  He further regrets that his actions could impair the public's perception of fairness in the judiciary, and assures the Commission and the Court that such conduct will never occur again.
>
> The Judicial Qualifications Commission finds and recommends that the interests of justice, public welfare, and sound judicial administration are best served by requiring Judge Holder to receive a public reprimand, and complete six additional CJE training hours on topics related to ethics.

## REVIEW OF JQC'S FINDINGS

This Court may "accept, reject, or modify in whole or in part" the findings

and conclusions of the JQC.  Art. V, § 12(c)(1), Fla. Const.  "This Court reviews

---

5. Canon 3B(9) states in pertinent part that "[a] judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness . . . ."

- 6 -

the findings of the JQC to determine whether the alleged violations are supported by clear and convincing evidence, and reviews the recommended discipline to determine whether it should be approved." In re Flood, 150 So. 3d 1097, 1098 (Fla. 2014) (quoting In re Woodard, 919 So. 2d 389, 390 (Fla. 2006)). "Although this Court gives the findings and recommendations of the JQC great weight, the ultimate power and responsibility in making a determination to discipline a judge rests with this Court." Id. (quoting In re Renke, 933 So. 2d 482, 493 (Fla. 2006)).

Judge Holder has admitted to the factual allegations regarding his actions and does not dispute the JQC's findings. We have held that "where a judge admits to wrongdoing and the JQC's findings are undisputed, this Court will ordinarily conclude that the JQC's findings are supported by clear and convincing evidence." In re Flood, 150 So. 3d at 1098 (quoting In re Diaz, 908 So. 2d 334, 337 (Fla. 2005)). Accordingly, we conclude that the findings are supported by clear and convincing evidence, the level of proof necessary to impose discipline.

We further conclude that Judge Holder's conduct was in violation of the five canons specified above. Judge Holder unilaterally contacted the President of the University of South Florida while the defendant's case was pending and promised in an ex parte communication that he could "personally modify" the defendant's community control. He further contacted the Chief Assistant State Attorney for the 13th Judicial Circuit and advocated on behalf of the defendant that the State should

allow the defendant to have his adjudication withheld. By engaging in such conduct, Judge Holder failed to maintain the high standards of conduct necessary to preserve the integrity of the judiciary, violating Canon 1, and acted in a manner that could potentially undermine public confidence in the judiciary, violating Canon 2A. Further, his conduct created the appearance of impropriety and partiality, violating Canon 2B. Finally, Judge Holder admitted to engaging in ex parte communications with the Chief Assistant State Attorney and sending a letter making public comments regarding the defendant's case to the President of the University of South Florida, violating Canons 3B(7) and 3B(9), respectively.

## RECOMMENDED DISCIPLINE

This Court is empowered to accept, modify, or reject the JQC's recommendations and "order that the . . . judge be subjected to appropriate discipline." Art. V, § 12(c)(1), Fla. Const. In reaching an agreement with Judge Holder on the recommended sanction, the JQC Investigative Panel noted that Judge Holder accepted full responsibility for his misconduct involving the defendant, and admitted that though he only intended to help the defendant, his actions went too far, creating the appearance of impropriety and partiality and that Judge Holder further regretted and apologized for the misconduct. Further, the JQC recognized that Judge Holder assured the Commission and this Court that such conduct will never occur again.

While we recognize that Judge Holder's conduct was motivated by a well-intentioned desire to help a defendant who was before him in Veteran's Court, as Judge Holder understands by his agreement to the violations and discipline, this type of assistance must still comply with the Code of Judicial Conduct and does not permit him to engage in ex parte communications. "[T]he object of disciplinary proceedings is not for the purpose of inflicting punishment, but rather to gauge a judge's fitness to serve as an impartial judicial officer." In re McMillan, 797 So. 2d 560, 571 (Fla. 2001). Existing precedent suggests that Judge Holder's conduct warrants public reprimand. See In re Bell, 23 So. 3d 81 (Fla. 2009) (public reprimand was appropriate judicial disciplinary sanction for judge who sua sponte ordered arrest without complaint from State Attorney's Office or another party); In re Henderson, 22 So. 3d 58 (Fla. 2009) (public reprimand was appropriate judicial disciplinary sanction for county judge's association as mentor with convicted felon who had been a criminal defendant in the judge's court); In re Maxwell, 994 So. 2d 974 (Fla. 2008) (public reprimand was appropriate sanction for judge's improper acceptance of ex parte communication).

## CONCLUSION

On the record before us, we conclude that there is clear and convincing evidence to support the findings of fact as to all charges and we approve the stipulation entered into by Judge Holder and the JQC. Accordingly, we hereby

- 9 -

command Judge Gregory Holder to appear before this Court for the administration of a public reprimand at a time to be established by the Clerk of this Court and further direct that Judge Holder complete six additional CJE training hours on topics related to ethics.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Original Proceeding – Judicial Qualifications Commission

Judge Kerry I. Evander, Chair, Judge James A. Ruth, Vice-Chair, Michael Louis Schneider, Executive Director and General Counsel, and Alexander John Williams, Assistant General Counsel, Tallahassee, Florida,

for Florida Judicial Qualifications Commission, Petitioner

David Barnett Weinstein of Greenberg Traurig, P.A., Tampa, Florida,

for Judge Gregory Holder, Respondent