# Supreme Court of Florida

_____

No. SC20-1073

_____

**INQUIRY CONCERNING A JUDGE NO. 20-059 RE: DAVID CRAIG MILLER.**

November 5, 2020

PER CURIAM.

In this case, we review the findings and recommendation of the Florida Judicial Qualifications Commission (JQC) concerning Judge David Craig Miller of the Eleventh Judicial Circuit, and the stipulation entered into by Judge Miller and the JQC. We have jurisdiction. *See* art. V, § 12, Fla. Const. We approve the parties' stipulation that Judge Miller behaved inappropriately in the lobby outside his courtroom, that Judge Miller's conduct violated the Code of Judicial Conduct, and that the appropriate discipline is a public reprimand.

## BACKGROUND

This case arises from an incident that occurred on January 17, 2020, while Judge Miller was presiding over a civil trial. As stipulated by the parties, and as set forth in the JQC's Findings and Recommendation of Discipline,

the trial proceedings were interrupted continuously by loud noise from the public lobby outside of Judge Miller's courtroom.  The source of the sound was a result of many people congregating and not promptly disbursing [sic] from the public lobby at the conclusion of Judge William Altfield's investiture ceremony, which had occurred in the ceremonial courtroom on the same floor.

After attempts by Judge Miller to have the bailiff and then the clerk and bailiff "try to quiet the people in the lobby" proved unsuccessful,

> Judge Miller stepped down from the bench wearing his robe and proceeded into the lobby accompanied by his Bailiff.  Several witnesses, including judges and lawyers, observed Judge Miller to be "yelling," and waving his arms at the people in the lobby while trying to get them [to] be quiet.
>
> . . . .
>
> While trying to quiet the groups of people in the lobby, Judge Miller observed one person shaking her head while looking at him. Judge Miller believed she was telling him, "no," indicating that she would not cooperate with his attempt to quiet the crowd.  He acknowledged, however, that with hindsight she could have been shaking her head in disbelief over his behavior.  Responding to what he believed was contemptuous behavior, Judge Miller approached the individual and shouted, "Do not shake your head at me."  Judge Miller then twice threatened the person with contempt, demanding to know, "Do you want to be held in contempt?"  When the person answered that "no" she did not want to be held in contempt, Judge Miller continued to question the individual asking her name and whether she was employed in the Courthouse, before going back into his courtroom.  Two judges who were standing and conversing with the individual, who is employed by the 11th Judicial Circuit as an Assistant General Counsel, observed that she did not yell or say anything disrespectful, and, in their opinion, did not act in any way contemptuous.

(Footnote omitted.)

In April 2020, the JQC served a Notice of Investigation on Judge Miller stemming from this incident. On June 26, 2020, the Investigative Panel of the JQC conducted a hearing at which Judge Miller appeared, without counsel, and testified under oath. Following that hearing, the Investigative Panel determined that probable cause existed for the filing of formal charges. On July 24, 2020, the Investigative Panel formally charged Judge Miller with violating the Code of Judicial Conduct. On that same day, the JQC filed its Findings and Recommendation of Discipline, along with the stipulation executed by the parties.

In its Findings and Recommendation of Discipline, the JQC found that Judge Miller violated Canons 1, 2A, and 3B(4) of the Code of Judicial Conduct. Canon 1 provides:

> An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2A provides:

> A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Canon 3B(4) provides:

> A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of

staff, court officials, and others subject to the judge's direction and control.

The JQC recognized that "[i]nterruptions to court proceedings can create delays and other issues" and that "[j]udges are given tools for dealing with serious interruptions," including the tool of "the direct (or summary) contempt power by which a judge can summarily order the imprisonment of a person for nearly six months." But the JQC was "particularly disturbed by" Judge Miller's threat to use that contempt power against an individual merely "for shaking her head in disbelief over Judge Miller's behavior." The JQC explained: "Judge Miller had other options available for dealing with the disruption to his trial, such as taking a recess, or calling Court Administration to ask for assistance. The method he ultimately chose to employ reflected poorly on himself, and the judiciary as a whole."

After finding that Judge Miller's conduct violated Canons 1, 2A, and 3B(4), the JQC set forth as mitigating the fact that Judge Miller had no prior disciplinary history, either during his twenty-year career as a judge or during his many years as an attorney prior to becoming a judge. The JQC then recommended a public reprimand, observing that this Court had ordered a public reprimand for "similar misconduct . . . in the past."

In the stipulation, Judge Miller admitted to the alleged conduct, conceded that the conduct violated Canons 1, 2A, and 3B(4), and accepted the JQC's

- 4 -

findings and recommendation of discipline. Judge Miller "also agreed to avoid contact with the Courthouse employee that he threatened with contempt."

**ANALYSIS**

This "[C]ourt may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [JQC]." Art. V, § 12(c)(1), Fla. Const. Although we are under no obligation to accept a stipulation presented in a JQC case, we do "give[] the findings and recommendations of the JQC great weight." *In re Kinsey*, 842 So. 2d 77, 85 (Fla. 2003). In reviewing the JQC's findings, we look to "whether the alleged violations are supported by clear and convincing evidence." *In re Holder*, 195 So. 3d 1133, 1137 (Fla. 2016) (quoting *In re Flood*, 150 So. 3d 1097, 1098 (Fla. 2014)). And we review the JQC's "recommendation of discipline to determine whether it should be approved." *In re Diaz*, 908 So. 2d 334, 337 (Fla. 2005) (quoting *In re Andrews*, 875 So. 2d 441, 442 (Fla. 2004)). Based on our review in this case, we approve the parties' stipulation.

The JQC found that "Judge Miller's conduct . . . plainly fell below the high standard of conduct required by the Canons and this Court." Judge Miller admitted to the conduct and conceded the JQC's findings. "[W]here a judge admits to wrongdoing and the JQC's findings are undisputed this Court will ordinarily conclude that the JQC's findings are supported by clear and convincing evidence." *In re Diaz*, 908 So. 2d at 337. This case is no different. We accept the stipulation

that Judge Miller failed to personally observe the high standards of conduct demanded of the judiciary (Canon 1); acted in a manner that does not promote public confidence in the integrity of the judiciary (Canon 2A); and was not patient, dignified, and courteous to others (Canon 3B(4)).

As to the JQC's recommendation of discipline, we agree with the JQC that a public reprimand is appropriate. Indeed, as the JQC notes, we have imposed a public reprimand in other instances involving inappropriate threats of contempt. *See, e.g.*, *In re Aleman*, 995 So. 2d 395, 399-400 (Fla. 2008) (imposing public reprimand for judge whose conduct, which included an "unnecessary and harmful" threat of contempt, was determined to violate Canons 1, 2A, and 3B(4)). We recognize Judge Miller's cooperation and otherwise unblemished career, and we trust that Judge Miller going forward will at all times act in a manner that promotes public confidence in the integrity of the judiciary.

Although it by no means excuses Judge Miller's conduct, we are constrained to observe that the circumstances presented in this case arose only because a loud crowd disrupted trial court proceedings and persisted in their noisemaking after extended efforts were made to bring quiet so that the trial could go on. The lengthy disruption of that trial should never have occurred. Investiture ceremonies are significant events in the life of our courts, but they should not occasion the disruption of judicial business. The participation of judges or court staff in any

such disruption of court proceedings is a matter of serious concern. Administrative measures should be taken to ensure that such problems do not recur.

## CONCLUSION

We conclude that the JQC's findings are supported by clear and convincing evidence, and we approve the stipulation entered into by Judge Miller and the JQC. We hereby reprimand Judge David Craig Miller for his misconduct.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – Judicial Qualifications Commission

Honorable Krista Marx, Chair, Blan L. Teagle, Executive Director, and Alexander J. Williams, General Counsel, Judicial Qualifications Commission, Tallahassee, Florida,

for Florida Judicial Qualifications Commission, Petitioner

Honorable David Craig Miller, pro se, Miami, Florida,

for Respondent